

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2008

# Makky v. Secretary Homeland

Precedential or Non-Precedential: Precedential

Docket No. 07-3271

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Makky v. Secretary Homeland" (2008). *2008 Decisions.* Paper 594.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/594

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3271

———

DR. WAGIH H. MAKKY,
                    Appellant

v.

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security, in
his official capacity; KIP HAWLEY,
Director, Transportation Security
Administration, in his official
capacity; DEPARTMENT OF HOMELAND
SECURITY; TRANSPORTATION SECURITY
ADMINISTRATION; OFFICE OF PERSONNEL
MANAGEMENT; FEDERAL BUREAU OF
INVESTIGATION

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-cv-04329)
District Judge: Hon. Joseph E. Irenas

———

Argued June 25, 2008

Before: SLOVITER, BARRY and ROTH, Circuit Judges

Filed: August 7, 2008

———

Baher Azmy
Scott Michelman     (Argued)
Jason Brown, pursuant to L.A.R.  46.3(a)
Scott Hovanyetz, pursuant to L.A.R. 46.3(a)
Seton Hall Law School
Center for Social Justice
Newark, New Jersey 07102

Edward Barocas
ACLU of New Jersey
Newark, New Jersey 07101

Arthur B. Spitzer
ACLU of the National Capital Area
Washington, D.C. 20036

        Attorneys for Appellant

Jeffrey Bucholtz
        Acting Assistant Attorney General
Christopher J. Christie
        United States Attorney
Marleigh D. Dover, Esquire
Steven Y. Bressler, Esquire    (Argued)
Civil Division
United States Department of Justice
Washington, D.C. 20530-0001

Alex Kriegsman, Esquire
Office of United States Attorney
Newark, New Jersey 07102-0000

        Attorneys for Appellees

OPINION OF THE COURT


2

SLOVITER, <u>Circuit Judge</u>.

This appeal requires us to decide, as an issue of first impression, whether a plaintiff's prima facie case in a mixed-motive Title VII employment discrimination action fails if it is irrefutable that plaintiff does not meet a necessary objective qualification for the job.[1]

## I.

### Factual Background and Procedural History

Appellant Dr. Wagih Makky emigrated to the United States from Egypt thirty years ago, and became a naturalized citizen of the United States. He also became a prominent researcher and university professor in the field of aviation security, and is considered to be a technical expert in that field. After the bombing of a Pan American Airways airliner over Lockerbie, Scotland, the United States government asked Makky to create a unit within the Federal Aviation Administration ("FAA"), later subsumed into the Transportation Safety Administration ("TSA"), for the purpose of developing technology to detect and prevent explosives from being detonated aboard commercial planes and trains. He was one of six founding members of that project with a stated purpose of preventing terrorist attacks on American passenger jets.

According to Makky's complaint,[2] Makky's "expertise in the detection of contraband and explosives is recognized

---

[1] At oral argument, the government argued that two of our prior cases reached this issue. <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1113-14 (3d Cir. 1997) (<u>en banc</u>). <u>Fuentes</u> was a pretext case, not a mixed-motive case. <u>See</u> <u>Fuentes</u>, 32 F.3d at 762. <u>Keller</u> was both a pretext and mixed-motive case but did not explicitly reach the issue presented here.

[2] Because this is an appeal from the grant of a motion to dismiss, we accept as true the factual allegations contained in Makky's complaint.

throughout the world." App. at 75. He has authored many scientific papers, served on national inter-agency committees, and has chaired international symposia on explosives detection technology. He is one of the nation's "foremost technical experts on transportation security." App. at 68.

Makky has been married to his wife, an American citizen, for over twenty-five years, and all of his close family members living in Egypt have passed away with the exception of his two brothers. Although Egyptian law provides that a person born to an Egyptian father is irrevocably an Egyptian citizen, Makky considers himself only an American citizen, and he does not possess an Egyptian passport.

Makky was employed by the United States government for the fifteen years between 1990 and 2005. In 1987, Makky first applied for a security clearance due to his position as a senior fellow at the Naval Oceans Systems Center. He was approved and was granted a "secret" level security clearance. Then, in 1990, he accepted the position with the FAA described above. In connection with that position, he was once again granted a "secret" level clearance and was stationed at the Transportation Security Research and Development division in Atlantic City, New Jersey.

In 1996, Makky's security clearance was upgraded to "top secret." At that time, Makky notified the government via his clearance application that he had recently found out that Egypt still considered him a dual citizen of that country, and he indicated that dual citizenship on the application.

Makky's performance reviews have rated him at "exceptional" and "outstanding." App. at 76. "Dr. Makky's job performance has been exemplary." App. at 76. He has been commended for his "extraordinary technical insight." App. at 76.

Makky was the only Muslim and only person of Arab descent in his division. According to his complaint, he has "always [been] treated differently than the other members of the group on account of his national origin and religion." App. at 76. The person who hired Makky told him that it was a mistake to hire

4

someone of Arab descent. Another supervisor who spoke to a group of employees, including Makky, stated, in the context of a conversation about a possible terrorist attack by Islamic fundamentalists, "Muslims have no brains." App. at 76. Following the September 11, 2001 attacks, Makky faced increased prejudice and hostility at work.

A.      Security Clearance Renewal

In March 2002, Makky submitted a required security clearance renewal application. According to Makky, there were no material changes since his 1987 application, except that some of his family members had died so he had fewer connections with Egypt.

In October 2002, while the security clearance renewal was still pending, Makky came under the supervision of Robin Burke when Burke became Deputy Administrator of the Security Lab. According to the complaint, Burke "took an unusual interest in Dr. Makky's national origin." App. at 77. Specifically, Burke "made it a point" to meet with Makky one-on-one and inquired into Makky's "background." App. at 77. "The first and only thing Burke wanted to know about Dr. Makky was his national origin." App. at 78. Makky was the only non-supervisory employee with whom Burke met.

B.      Suspension With Pay

On March 19, 2003, the day the United States invaded Iraq, the TSA, through Burke, placed Makky on paid administrative leave and, without giving any explanation, told him not to come to work. One week later, Makky received a letter from Burke stating that he had been placed on administrative leave "as a result of questions concerning [his] security clearance." App. at 79. Makky later learned that Burke had obtained a copy of Makky's FBI file even though Burke had no role in the security clearance process. Burke continued to take an active interest in Makky's clearance.

In January 2005, the Associate Deputy Director of the Office of Transportation Vetting & Credentialing ("OTVC"), Joy S. Fairtile, issued an initial determination to Makky indicating that

a non-final determination was made to deny his security clearance application pending further review. The notice of suspension cited several security concerns, including Makky's dual citizenship, foreign relatives and associates, foreign countries he had visited, and alleged misuse of his government computer as reasons for the action. Makky began the process of administrative appeal on April 18, 2005 by responding in writing.

On August 8, 2005, at Burke's direction, Makky was given a Notice of Proposed Suspension for an Indefinite Period, citing the security clearance revocation as the reason. Makky responded on August 24, 2005 in writing and through counsel.

C.     Suspension Without Pay

Makky was paid throughout his almost two and a half years of administrative leave until September 7, 2005, when Burke suspended Makky indefinitely without pay. Makky responded on December 16, 2005 with an oral presentation, and on December 27, 2005 with additional written responses.

On March 7, 2006, the TSA issued its Final Denial of Security Clearance to Makky, signed by Chief Security Officer Douglas I. Callen. The Notice stated that Makky had successfully mitigated all concerns about his security clearance except one – concerns about foreign relatives and associates, whose identities were not disclosed. The basis for the concern stemmed from information in Makky's FBI report. A redacted version of Makky's FBI file had been released to him on August 18, 2005. This version did not contain information regarding the foreign associates.

Makky also appealed his suspension to the Merit Systems Protection Board ("MSPB" or "Board") on October 5, 2005. The Administrative Judge ("AJ"), Michael Garrety, held a hearing on January 13, 2006. In his decision, the AJ noted that Makky's appeal challenged the TSA decision suspending him indefinitely without pay effective September 8, 2005. The AJ stated that Makky was entitled to the following procedural rights: (1) 30 days' advance written notice of the proposed action, stating the specific

6

reasons for the action; (2) a reasonable amount of time to respond to the proposed action and to furnish documents in response; (3) the right to representation; and (4) a written decision on the action. The AJ concluded that Makky had an adequate opportunity to make a meaningful response, and that the AJ could not review the determination not to permit Makky access to certain information because it was not a permissible basis for review, see King v. Alston, 75 F.3d 657, 661-62 (Fed. Cir. 1996).

Makky argued that he had received disparate treatment on the basis of his national origin and religion. The AJ acknowledged that the evidence that Burke inquired into Makky's national origin when he first met him was unrebutted but nevertheless found that "this evidence is insufficient to establish that membership in a protected category was a motivating factor in the agency's indefinite suspension action." App. at 14.

Makky also argued that rather than being suspended without pay he should have been able to remain in administrative leave status while the final outcome of the security clearance was being determined. The AJ stated that because Makky's "retention in administrative leave status was contrary to agency policy," App. at 17, it was not appropriate for him to remain in an administrative leave status.

The AJ denied all of Makky's claims and informed him that the decision would become final on May 9, 2006.

Makky petitioned the full Board for review. The MSPB denied the petition. Thus, the order suspending Makky without pay became final on August 15, 2006. On September 14, 2006, Makky commenced suit in the United States District Court for the District of New Jersey. On January 5, 2007, the FBI responded to the request Makky had previously made under the Freedom of Information Act ("FOIA") to obtain an unredacted copy of the previously redacted portions of his investigative file. It provided him with additional portions of his FBI file, including the relevant portion listing his foreign relatives and associates. Thereafter, the District Court dismissed Makky's case, and he filed a timely notice of appeal.

7

D.    District Court Decision

Makky's District Court complaint contained seven claims: (1) employment discrimination under Title VII, 42 U.S.C. § 2000e-16(a) (Count 1); (2) employment discrimination under the Civil Service Reform Act of 1978, 5 U.S.C. § 2303(b) ("CSRA") (Count 2); (3) due process violations (Count 3); (4) violation of agency procedures under the CSRA (Count 4); (5) retaliation under the CSRA (Count 5); (6) violation of FOIA, 5 U.S.C. § 552(a)(3)(A) (Count 6); and (7) violation of the Privacy Act, 5 U.S.C. § 552a(d)(1) (Count 7).  Appellees moved to dismiss the first three counts on the basis that the Court lacked subject matter jurisdiction; they sought summary judgment on all other counts.

The District Court based its jurisdiction on 5 U.S.C. § 7703(b)(2) because this is a "mixed case" involving allegations of employment discrimination as well as procedural violations.  The Court applied de novo review of the discrimination claim and deferential review (i.e., abuse of discretion) to the non-discrimination claims.  Appellees argued that the District Court did not have jurisdiction to review the denial of Makky's security clearance and therefore it could not review his termination based upon the denial of the clearance.  However, the Court recognized that Makky "does not contest the security clearance determination. Rather his sole argument is that the decision to place him on unpaid leave on September 8, 2005, was discriminatory because the TSA could have selected one of two less severe options . . . ."  App. at 32-33.  The Court noted that those options were transfer to a position not requiring a clearance or remaining on paid leave.  Thus, Makky argued, the Court had jurisdiction because it did not have to consider the merits of the security clearance to review the claims of discrimination under a mixed-motive theory.

The District Court dismissed Count 1 of the complaint (the Title VII discrimination claim) because even under a mixed-motive theory, the fact-finder would not be able to weigh the non-discriminatory reason proffered, the security clearance revocation, and therefore could not determine whether the alleged discrimination was a motivating factor or not.  The Court concluded, "[b]ecause as a matter of law Dr. Makky cannot prevail

8

on either a mixed-motive or a pretext theory, Defendants' motion to dismiss Count One will be granted." App. at 38.

The Court dismissed Count 2 and the part of Count 3 alleging discrimination because those counts were premised on the CSRA. With respect to the Due Process claims (regarding failure to get information requested, failure to follow proper procedures, etc.) alleged in the remaining counts, the Court, citing King, 75 F.3d at 661-62, and Cheney v. Department of Justice, 479 F.3d 1343, 1346 (Fed. Cir. 2007), concluded that the AJ's decision was not erroneous.

With respect to the claims under FOIA and the Privacy Act, the Court held that the defendants met their burden to show that the documents at issue fell into a statutory exemption for material to be held secret in the interest of national security. The Court also determined that an in camera review was not necessary.

On appeal, Makky argues that the District Court erred with respect to the Title VII discrimination claim and the Due Process claim under the CSRA. He argues that his suspension without pay in September 2005 violated Title VII because discrimination was a motivating factor in the decision to suspend him without pay rather than to transfer him to another position or continue to suspend him with pay. He also argues that he was entitled to the materials in his FOIA request prior to his suspension without pay.

## II.

### Jurisdiction and Standard of Review

We have jurisdiction over this appeal of a final judgment pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction because this is a "mixed case," i.e., one containing allegations of employment discrimination as well as allegations of procedural violations under the CSRA. See 5 U.S.C. § 7703(b)(2). We review the District Court's grant of the government's motion to dismiss the Title VII claim de novo. See Pa. Employees Benefit Trust Fund v. Zeneca, Inc., 499 F.3d 239, 242 (3d Cir. 2007). We also review the District Court's grant of the motion for summary judgment of

9

Makky's due process claim de novo, and apply the same standard applicable in the District Court. Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). We review the agency decision on the administrative record to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise unsupported by law or substantial evidence. See 5 U.S.C. § 7703(c).

### III.

### Discussion

A.     Title VII Claim

Although Makky was dismissed from his position, his complaint is limited to TSA's decision to suspend him without pay on September 7, 2005, which he claims was motivated by discriminatory animus. Thus, he seeks back pay[3] for the period between September 8, 2005, when the suspension took effect, and March 7, 2006, when his security clearance denial became final, on the theory that the government could have transferred him to a position not requiring a security clearance or could have kept him on a suspended-with-pay status. Importantly, Makky does not challenge as discriminatory the initial decision in January 2005 to deny his security clearance pending review or the decision to place him on leave with pay in March 2003 when the security clearance issue was first raised. We note that the initial decision to deny the security clearance and the later decision to suspend Makky without pay are two discrete events.

Makky argues that in addition to the security clearance denial, a motivating factor in the government's decision to suspend him without pay was discriminatory animus. The government argues that we have no jurisdiction to review this claim because we cannot review the merits of a security clearance denial and such review would be necessary to examine Makky's claim. The

---

[3] There was some dispute at oral argument whether Makky actually seeks back pay or whether he seeks reinstatement and attorneys' fees. It is not necessary to resolve this dispute.

government also contends that even if we did have jurisdiction, Makky cannot prevail on his claim of discrimination because he was not qualified to do his job.

1.      Jurisdiction

In Department of the Navy v. Egan, 484 U.S. 518 (1988), a non-Title VII case, the Supreme Court held that there is no judicial review of the merits of a security clearance determination. That decision is exclusively for the executive. The Court also stated that the denial of a security clearance is not an "adverse action." Id. at 530. Thereafter, in Stehney v. Perry, 101 F.3d 925 (3d Cir. 1996), another non-Title VII case, we considered the claim of a mathematician for the NSA who was fired for refusing to take a polygraph test. She sued, alleging equal protection and due process violations, among other claims. The district court had dismissed all claims under Egan. We upheld the dismissal but for different reasons. We stated: "If Stehney had asked for review of the merits of an executive branch decision to grant or revoke a security clearance, we would agree. But not all claims arising from security clearance revocations violate separation of powers or involve political questions." Id. at 932. We held that we could review the merits of Stehney's claims because Stehney had standing, and her claims were not barred by the political question doctrine or the doctrine of sovereign immunity. We concluded, however, that a writ of mandamus, which Stehney sought, was not appropriate because Stehney had not sought relief under the Administrative Procedure Act in the first instance. Moreover, deciding the merits, we held that the NSA had followed its own regulations in denying the security clearance and Stehney received all the process she was due regarding the denial of the clearance (if she was due any process at all since no one has a "right" to a security clearance). Importantly, we noted that there was a distinction between challenging the merits of a clearance revocation and challenging the revocation process, and we had jurisdiction to rule on the latter. Id.

Here, Makky asserts: "As alleged in the Complaint, TSA supervisor Robin Burke suspended Dr. Makky without pay on account of Dr. Makky's national origin and religion, in violation of

11

Title VII of the Civil Rights Act of 1964. Although proceedings surrounding his security clearance had been commenced at the time of Burke's actions, Dr. Makky's allegations nevertheless clearly state a Title VII claim that does not in any way depend on an analysis of whether the ultimate suspension or revocation of his security clearance was proper." Appellant's Br. at 15. Makky acknowledges that he would be foreclosed under Egan from challenging the decision to deny the security clearance, even if it were denied due to discrimination. He emphasizes that is not what he is arguing.

Instead, he argues that the decision to suspend him without pay was motivated in substantial part by discriminatory animus, and that claim is not foreclosed under Egan. He compares his situation to that of Stehney, who, we held, could challenge the process by which her clearance was denied. Based on our precedent in Stehney, we conclude that we have jurisdiction to review Makky's claim of discrimination because a discrimination claim under a mixed-motive theory does not necessarily require consideration of the merits of a security clearance decision. The basis of a mixed-motive theory is that both a legitimate and discriminatory reason for an employment decision can co-exist. See Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 216 (3d Cir. 2000) (recognizing that the point of a mixed-motive theory is that a plaintiff may suffer discrimination even though there may also be a legitimate reason for the adverse employment action). We reiterate that in analyzing Makky's mixed-motive Title VII claim, we cannot question the motivation behind the decision to deny Makky's security clearance.

2.     Mixed-Motive Theory of Discrimination

A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons. Following some division among the circuits as to application of Price Waterhouse, Congress enacted two new statutory provisions geared

12

toward setting the applicable standard in a mixed-motive case. The first provision stated: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The second provision gave the employer a limited affirmative defense to "'demonstrate that it would have taken the same action in the absence of the impermissible motivating factor.'" Desert Palace, Inc. v. Costa, 539 U.S. 90, 95 (2003) (quoting 42 U.S.C. § 2000e-5(g)(2)(B)) (alterations omitted). If proven, this defense limits the plaintiff's relief to injunctive relief, attorneys' fees, and costs. Id. at 94.

Although the courts were divided about whether a discrimination claim brought under a mixed-motive theory had to be proven with direct evidence, the Supreme Court resolved the circuit split in Desert Palace by holding that a plaintiff does not need to present "direct evidence" of discrimination to proceed on a mixed-motive theory of discrimination under Title VII. Id. at 92. The Court reiterated the general principle that "Title VII has made it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , because of such individual's race, color, religion, sex, or national origin." Id. at 92-93 (quoting 42 U.S.C. § 2000e-2(a)(1)). In sum, "[i]n order to obtain an instruction under § 2000e-2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Id. at 101.

3.    Requirement of Basic Qualification in Mixed-Motive Cases

Assuming arguendo that Makky has adequately pled that the TSA discriminated against him, we must decide whether an essential qualification for the job is a component of Makky's prima facie case. When a plaintiff attempts to prove a discrimination claim under a pretext theory, the McDonnell Douglas burden-shifting framework applies. See 411 U.S. at 802-04. Under that familiar test, the plaintiff must first establish a prima facie case of

discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. See McDonnell Douglas, 411 U.S. at 802; Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc).

If a plaintiff establishes a prima facie case of discrimination, then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination. See id. at 507-08.

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002), the Court held that the McDonnell Douglas prima facie case is an "evidentiary standard, not a pleading requirement." In addition, the Court stated that the McDonnell Douglas framework does not apply in every case, and the requirements of a prima facie case may vary depending on the case. Id. at 511-12. See also Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) (stating that the required elements of a prima facie case depend on the facts of the particular case).

The McDonnell Douglas burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case because the issue in a mixed-motive case is not whether discrimination played the dispositive role but merely whether it played "a motivating part" in an employment decision. It is significant that in Desert Palace, the Court omitted any discussion of the McDonnell Douglas framework as a requirement in mixed-motive cases.

Makky argues that qualification for the position, an element of the prima facie case in the McDonnell Douglas test, does not need to be established in a mixed-motive case because the essence of the mixed-motive theory is the recognition that there may be a

14

legitimate reason, as well as a prohibited reason, for the adverse employment action. The government argues that even under a mixed-motive theory, a plaintiff must state a prima facie case in order to prevail.[4] The government argues that at least Makky must demonstrate that he was "minimally qualified for his job . . . ." Appellees' Br. at 31.

We need not decide the question whether a plaintiff pursuing a mixed-motive theory of discrimination must satisfy each of the elements of the McDonnell-Douglas prima facie case, as that issue is not squarely before us. We limit our consideration to the need for plaintiff to show his or her qualification, and specifically objective qualification, for the job. For example, if the hospital employing a person who has been performing surgery learns that the employee falsified his or her qualifications and never went to medical school, that employee could not establish a prima facie mixed-motive case irrespective of allegations of racial or ethnic discrimination. We hold today that a mixed-motive plaintiff has failed to establish a prima facie case of a Title VII employment discrimination claim if there is unchallenged objective evidence that s/he did not possess the minimal qualifications for the position plaintiff sought to obtain or retain. In this respect at least, requirements under Price Waterhouse do not differ from those of McDonnell Douglas.

In the usual case, the issue of basic qualification will not arise until the summary judgment stage, following discovery and fact-finding, because it will ordinarily be a question of fact. The issue will turn on whether plaintiff is able to perform or has satisfactorily performed the job, an issue that entails a subjective

---

[4] The government cites Berquist v. Washington Mutual Bank, 500 F.3d 344, 356 (5th Cir. 2007), in support of this proposition, but that case involved a claim under the Age Discrimination in Employment Act ("ADEA") and did not explicitly distinguish between "pretext" discrimination cases and "mixed-motive" discrimination cases. It does, however, suggest that in a mixed-motive ADEA case a plaintiff would need to show that s/he is qualified to do his or her job.

15

evaluation to be evaluated by the factfinder. It is only in the rare mixed-motive case that plaintiff's lack of qualification to do the job will be capable of objective determination before discovery.

Our holding today is necessarily narrow. We merely hold that in a mixed-motive employment discrimination case a plaintiff who does not possess the objective baseline qualifications to do his/her job will not be entitled to avoid dismissal.

This involves inquiry only into the bare minimum requirement necessary to perform the job at issue. Typically, this minimum requirement will take the form of some type of licensing requirement, such as a medical, law, or pilot's license, or an analogous requirement measured by an external or independent body rather than the court or the jury. This requirement comports with the purpose of the prima facie case as discussed by the Supreme Court in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981), insofar as it will eliminate the "most common nondiscriminatory reason[] for the plaintiff's rejection" – lack of minimum baseline qualification. We caution that we are not imposing a requirement that mixed-motive plaintiffs show that they were subjectively qualified for their jobs, i.e., performed their jobs well. Rather, we speak only in terms of an absolute minimum requirement of qualification, best characterized in those circumstances that require a license or a similar prerequisite in order to perform the job.

4.      Whether Makky was Objectively Minimally Qualified

In this case, we need not dwell on when or how a plaintiff's qualification for an objective requirement for the position at issue should or will be raised because Makky included in his complaint the fact that in January 2005 the TSA suspended his security clearance. Although the suspension was not a final decision, it nevertheless rendered Makky "ineligible for access to National Security Information," App. at 117, and therefore it is not relevant that the decision was not final. Makky does not dispute that his position required him to have access to National Security Information. The lack of a security clearance in a position such as Makky's is akin to the lack of a license in a position such as a

16

medical doctor because without a security clearance Makky's subjective qualifications are irrelevant.[5] A security clearance is the minimum requirement needed to hold Makky's position. Thus, as of January 2005, when Makky's clearance was suspended, he was not qualified on the most basic level to perform his job.

As we noted earlier, Makky acknowledges that we cannot review the decision to deny his security clearance. Rather, Makky claims that he was discriminated against in September 2005 when he was suspended without pay. We need not decide whether a plaintiff would be entitled to prevail on a claim of employment discrimination for the period following the adverse employment action of suspension without pay until there is a final decision on that employee's entitlement to security clearance because Makky was not qualified to do his job as of January 2005, when he lost access to National Security Information.

Makky also argues that the decision to suspend him without pay in September 2005 was discriminatory because TSA could have transferred him to a different position not requiring access to National Security Information. We do not accept his contention that TSA could have transferred him rather than suspending him without pay. TSA had no legal obligation to do so.

Therefore, we will affirm the District Court's decision dismissing Makky's claim for employment discrimination, albeit for slightly different reasons.

B.      Due Process

Makky argues that TSA committed harmful procedural error by denying him adequate notice of the underlying reasons for his suspension in violation of its own directive, TSA Management

---

[5] We note that a security clearance may not be as objective a qualification as a medical license. Under Egan, however, the grant or denial of a security clearance takes on an objective quality because of the lack of judicial review of the underlying reasons for the decision.

17

Directive ("MD") No. 1100.75-3. Specifically, Makky claims that he was entitled to receive information about the identity of the foreign associates who were given as the reason for the ultimate denial of his security clearance.

Under the regulations governing the due process rights of TSA employees, the burden is on Makky to show that he suffered harmful error, which is "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.56(c)(3) (2005).[6]

Makky cites King, 75 F.3d at 661, for the proposition that the agency was required to give him notice of the reasons for the clearance suspension and an "adequate opportunity to make a meaningful reply . . . ." Although the King court applied the requirements of the CSRA, 5 U.S.C. § 7513, Makky asserts that those requirements are materially indistinguishable from MD No. 1100.75-3, the applicable TSA directive. In fact, the language of the relevant provisions differ, as the directive governing the TSA, MD No. 1100.75.3, pt. 6, sec. H.3.a.(1)(i) ("The employee should be provided a copy of the material relied upon to support each charge and specification with the letter."), does not contain the requirement that the employer give "specific reasons" as does 5 U.S.C. § 7513(b)(1) ("An employee against whom an action is proposed is entitled to . . . written notice . . . stating the specific reasons for the proposed action[.]"). Moreover, Appellees state that the statutory notice provision, 5 U.S.C. § 7513, does not apply here because TSA is exempted; therefore King and the other cases

_____

[6] Makky argues that the District Court should have applied the harmful error standard used in Mercer v. Department of Health & Human Services, 772 F.2d 856, 859 (Fed. Cir. 1985), i.e., that the error "might have caused the agency to reach a conclusion different than the one reached." Mercer cited the 1985 version of § 1201.56(c)(3) which used the word "might," but was later amended to its current form, which uses the phrase "likely to have caused." Thus, Makky relies on an outdated version of the applicable regulation.

18

Makky cites do not apply. In short, Appellees argue that Makky received all the notice he is owed.

In this case, it is not necessary for us to resolve whether § 7513 or MD No. 1100.75-3 applies, or whether the decisions of the Federal Circuit (the court of original jurisdiction for claims of procedural error under the CSRA, 5 U.S.C. § 7703(b)), in King, 75 F.3d 657, and Cheney, 479 F.3d 1343, apply here. Makky's due process claim is, at its heart, a claim that he did not receive proper notice concerning his security clearance denial because the initial notice he received did not state what associations with foreign nationals he failed to report and/or had caused the concern; rather the notice merely stated that he had failed to report associations with foreign nationals. Makky had successfully mitigated all of the other security concerns through his responses, but the information about foreign associates was ultimately critical to the final decision denying Makky's security clearance.

The foreign associates were listed in a classified FBI report. The TSA does not have the authority to release information that the FBI has declared "classified," particularly where, as here, Makky's security clearance had already been suspended at the time he sought the classified information. See 50 U.S.C. § 435(a)(1) (stating that "no employee in the executive branch . . . may be given access to classified information by any department, agency, or office . . . unless, based upon an appropriate background investigation, such access is determined to be clearly consistent with the national security interests of the United States"). See also Exec. Order No. 13,292, sec. 6.1(z), 68 Fed. Reg. 15,315, 15,332 (Mar. 28, 2003) (restricting access to National Security Information to those who have an appropriate clearance and a "Need-to-know" the information, which is at the sole discretion of authorized holders of the information). Because Makky did not have the requisite security clearance at the time he sought the classified information, TSA could not release that information to him. To conclude otherwise would require us to review the merits of Makky's security clearance access, which is impermissible, see King, 75 F.3d at 662 (citing Egan, 484 U.S. at 530).

Makky contends that he should have had access to the

19

information in the FBI classified file that contained the information about the foreign associates, because otherwise he was at a complete loss on how to respond since the associates had never been identified to him. Although the material was ultimately released in January 2007, it was not until well after the suspension, at a time that was too late to be meaningful. Makky states that if he had access to the material earlier he could have contested the TSA's allegations. The government argues that this case is similar to King, where the court held that plaintiff, who knew his medical status was at issue, was given adequate notice. Makky also could have focused his responses to his foreign associates. After all, they could hardly have numbered in the thousands.

Although there is some appeal to Makky's argument, the fact remains that the information Makky sought was classified[7] and he did not possess the proper security clearance to gain access to that information. Therefore, we cannot hold that the TSA should have released the classified information to Makky in violation of the relevant statutory and executive authority. The District Court properly affirmed the AJ's holding that Makky was given adequate due process.

## IV.

### Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court dismissing Makky's Title VII employment

---

[7] Makky argues that there is no record evidence that the material was classified at the time he requested it. He bases that argument on the fact that the government ultimately disclosed the material on January 5, 2007, and his claim that there is no record evidence to support the contention that it was classified prior to that date. However, there is record evidence to support the conclusion that the material was classified, specifically the assertions contained within the TSA's final written notice denying Makky's security clearance. See App. at 119-21 (referring to the information regarding foreign associates as classified material).

discrimination claim and granting summary judgment in favor of Appellees on his due process claim.