NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-3628

_____

MARY TRAPANI,
                    Appellant

v.

GREATWIDE LOGISTICS SERVICES, LLC;
JOSEPH CHANDLER, INDIVIDUALLY AND
IN HIS PROFESSIONAL CAPACITY AS PRESIDENT,
GREATWIDE TRUCKLOAD MANAGEMENT;
JOHN HOVE, INDIVIDUALLY AND IN HIS PROFESSIONAL
CAPACITY AS GENERAL COUNSEL,
GREATWIDE LOGISTICS SERVICES;
GWTM LLC, SUCCESSOR IN INTEREST TO
GREATWIDE TRUCKLOAD MANAGEMENT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cv-00334)
District Judge:  Honorable Mary A. McLaughlin

_____

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2012

Before: SLOVITER, CHAGARES, and JORDAN, *Circuit Judges*

(Filed: June 29, 2012)

_____

OPINION

_____

SLOVITER, *Circuit Judge*.

Mary Trapani appeals the District Court's entry of summary judgment on her claim that GWTM, LLC discriminated against her because of her gender in violation of Title VII. We will affirm.[1]

## I.

Because we write primarily for the parties, we will discuss briefly only the facts and procedural history. GWTM is a Pennsylvania based trucking company and a subsidiary of Greatwide Logistics Services, LLC ("GWLS"). GWTM's predecessor, Greatwide Truckload Management, LLC ("Truckload Management"), hired Trapani in December 2008 as the company's Vice President of Organizational Development.

Later in 2008, GWLS and its subsidiaries ran into serious financial difficulties and filed for bankruptcy. To help with the crisis, Truckload Management created a "downsizing taskforce," which implemented four cost saving proposals. One of the taskforce's proposals recommended "Executive Consolidation," which entailed the termination of Trapani and three other senior staff officials.

Trapani brought suit alleging that she was terminated because of her gender, in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and (2), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 955(a). Trapani also asserted unlawful

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of summary judgment, and we apply the same standard applicable in the District Court found in Federal Rule of Civil Procedure 56. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

2

retaliation.  The District Court entered summary judgment on Trapani's action, and Trapani timely appealed.[2]

## II.

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).  If a plaintiff establishes a prima facie case, then "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.*  If the defendant carries its burden, the plaintiff may still prevail by showing that "the defendant's proffered reason is merely pretext for intentional discrimination." *Id.*

Trapani argues that the District Court erred in granting summary judgment because there is a genuine dispute as to whether her action could give rise to an inference of intentional discrimination.  More precisely, Trapani claims that the Court erroneously concluded that she was not similarly situated to two Truckload Management vice presidents—John Rosch and Eric Madison.[3]  However, the District Court determined that

---

[2] Trapani does not challenge the District Court's dismissal of her retaliation claims.

[3] A plaintiff may establish an inference of discrimination by, inter alia, showing that similarly situated employees outside the plaintiff's protected class were treated more

3

Trapani was similarly situated to Rosch but was not treated differently. *See* App. at 23-24. Similarly, the Court concluded that Madison's treatment did not support an inference of discrimination even if he was similarly situated to Trapani.

Trapani also argues that complaints about her "style" give rise to an inference of discrimination. Before Trapani's termination, four regional vice presidents complained to the company's president, Joseph Chandler, "about the way that [Trapani] talked to them during [a] conference call." App. at 411. However, there is no evidence supporting Trapani's claim that the complaints were motivated by Trapani's gender. Moreover, even if we assumed that a rational jury could conclude that the complaints were related to Trapani's gender, such evidence alone is insufficient to survive summary judgment. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) ("[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor . . . .").[4]

Finally, Trapani argues that the District Court erred by concluding that: (1) GWTM presented a legitimate, non-discriminatory reason for her termination and (2) there is insufficient evidence to show pretext. Before Trapani's termination, GWLS and

---

favorably. *Cf. Sarullo v. U.S. Postal Service*, 352 F.3d 789, 798 & n.7 (3d Cir. 2003) (per curiam).

[4] Trapani also argues that the District Court ignored evidence that Rob Newell—a vice president at Greatwide Dedicated Transport—stated that Chandler hated her because Chandler "is a Texan and [Trapani is] a woman," and described a general anti-female animus held by employees from Texas. However, the District Court considered that evidence and correctly held that Newell's comments "cannot raise an inference of unlawful discrimination" because: (1) "Newell . . . had no influence over decisions with respect to the plaintiff's employment" and (2) "after the plaintiff reported the comment to Chandler, Chandler acted on the comment and reported it to [GWLS's general counsel]." App. at 26.

4

its subsidiaries filed for bankruptcy and experienced a substantial drop in revenue. Although Trapani claims that "[t]he bankruptcy was little more than a debt-equity swap," Appellant's Br. at 39, there is ample evidence that Trapani's employer experienced true financial difficulty.

With respect to pretext, Trapani relies on the evidence of discrimination rejected above and further asserts that: (1) Chandler considered Trapani's work adequate and (2) after Trapani's termination, another female was hired as supervisor of human resources. The District Court, however, properly determined that "the fact that Chandler considered the plaintiff's work to be adequate is consistent with the defendants' proffered rationale that the plaintiff was terminated for economic reasons . . . .". App. at 29. Moreover, not only did the supervisor hired after Trapani have different responsibilities, but her female status undermines Trapani's gender discrimination claim.[5]

### III.

Accordingly, we will affirm the District Court's judgment.[6]

---

[5] Trapani contends that Chandler lured her into working for GWTM "by telling her that he wanted her to be part of the Company's growth." Appellant's Br. at 42. However, no rational jury could conclude that such evidence shows that the company's subsequent financial difficulties are merely a pretext for intentional discrimination. Trapani further argues that the District Court entered summary judgment by impermissibly weighing evidence, but overall the record does not support Trapani's gender discrimination claim.

[6] Although Trapani originally brought gender discrimination claims against GWLS, she does not contest the District Court's dismissal of those claims. *See* App. at 30-31. Such claims are therefore waived. *See Simmons v. City of Phila.*, 947 F.2d 1042, 1065-66 (3d Cir. 1991). Furthermore, Appellant's PHRA claims fail for the reasons set forth in this opinion. *See Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").