**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2303
_____

ROLAND STUCKE,

Appellant

v.

CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil No. 2-12-cv-06216)
District Judge:  Honorable Petrese B. Tucker
_____

Argued on April 18, 2016

Before: MCKEE, Chief Judge*, FUENTES** and ROTH, Circuit Judges

(Opinion filed April 12, 2017)

_____

* Honorable Thomas A. McKee was Chief Judge at the time this appeal was argued.
Judge McKee completed his term as Chief Judge on September 30, 2016.

** Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Timothy R. Hough, Esquire                    (**Argued**)
Jaffe & Hough
1500 John F. Kennedy Boulevard
1907 Two Penn Center Plaza
Philadelphia, PA 19102

        Counsel for Appellant


Michael E. Angelotti, Esquire                (**Argued**)
City of Philadelphia
Law Department
1515 Arch Street
One Parkway
Philadelphia, PA 19102

        Counsel for Appellee

_____

OPINION[*]

_____


ROTH, <u>Circuit Judge</u>

      Ronald Stucke brought an action pursuant to Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.[1]  The District Court granted summary judgment to the defendant, the City of Philadelphia.  Stucke appealed.  For the reasons set forth below, we will affirm the judgment of the District Court.

**I.**

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] 43 P.S. § 951, *et seq.*

Since we write primarily for the parties involved, the facts of this matter, which are ably set forth in the District Court's thorough opinion,[2] will be discussed only in an abbreviated fashion. Stucke is a Caucasian male, who works for the Philadelphia Prison System. During the relevant time period, he was the Industry Shop Supervisor for PhilaCor, a program for inmates to learn trades while serving their sentences. Stucke had exemplary work attendance and reviews.

In early 2009, Stucke's boss, the PhilaCor Assistant Director, died. The PhilaCor Director, Eleanor Doherty, recommended that Stucke fill the post on an acting basis, and Stucke was promoted to Acting Assistant Director in June 2009. The Assistant Director job description stated that the "Minimum Acceptable Training and Experience" included "a bachelor's degree in business administration, education or a related field at an accredited college or university" as well as two years of "supervisory experience in a correctional industries program[, o]r any equivalent combination of education and experience determined to be acceptable by the Office of Human Resources." The previous Assistant Director did not have a college degree. Stucke did not have a college degree, nor did he have a high school diploma.

Approximately five months later, Doherty told Stucke that Deputy Commissioner Hammond, under whose portfolio the PhilaCor system fell, had reminded her about the degree requirement for the Assistant Director position. Stucke admits that he had never looked at the job description; thus, he never saw the degree requirement or the exception

[2] *Stucke v. City of Phila.*, No. 12-6261, 2015 WL 2231849, at *1–4 (E.D. Pa. May 12, 2015).

3

for similar experience. After his discussion with Doherty, Stucke resigned from the acting Assistant Director position, reasoning that he had no chance at becoming the permanent Assistant Director due to his lack of a college degree and his unwillingness to obtain a high school or college diploma. Stucke returned to his previous position as a shop supervisor. Steven Brooks, an African-American male, became Acting Assistant Director.

Upon Stucke's return to his previous position, Brooks was Stucke's immediate supervisor. Stucke complains about several incidents that occurred after he returned to his position as shop supervisor, including the removal of a computer from his office, his discipline following an altercation with Brooks, several denials of transfers to his desired shifts, and his reassignment as a supervisor to another shop in the PhilaCor program. However, the parties also stipulated that no "City employee made any derogatory remarks to Stucke about his race."[3] There is no record evidence of any racial animus directed at Stucke or any other Caucasian employee in the prison system.

Stucke filed an administrative complaint with the Pennsylvania Human Relations Commission and the EEOC on February 14, 2011, alleging that he had been "discriminated against because of his race and retaliated against for intending to exercise his Title VII rights." After receiving a right-to-sue letter in 2012, he filed suit against the City of Philadelphia in the United States District Court for the Eastern District of Pennsylvania.

---

[3] J.A. 63 ¶ 21.

In his second amended complaint, the operative complaint in this matter, Stucke raised four claims: (1) Hostile Work Environment in violation of Title VII, (2) Disparate Treatment in violation of Title VII, (3) Hostile Work Environment and Disparate Treatment under the Pennsylvania Human Relations Act, and (4) a general "Retaliation" claim. The District Court granted summary judgment to the City on all counts. Stucke appealed.

## II.[4]

Although there are four counts in the second amended complaint, Count III, which alleges violations of the Pennsylvania Human Relations Act (PHRA),[5] is evaluated in the same way as violations under Title VII.[6] Thus, in our discussion of the hostile work environment, disparate treatment, and retaliation claims, the analysis of these claims applies equally to the Title VII and PHRA counts.

## A.

A plaintiff seeking to prove a hostile work environment claim must show that:

> (1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability.[7]

---

[4] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1367. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment, making all reasonable inferences in favor of the non-moving party. *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 327–28 (3d Cir. 2016).

[5] 43 Pa. Stat. § 951 *et seq.*

[6] *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir 2015).

[7] *Carver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)) (alteration in original).

Isolated incidents and "offhanded comments . . . are not sufficient to sustain a hostile work environment claim."[8] We must view the events in the totality of the circumstances to determine if they, taken together, rise to the level of a hostile work environment.[9] They do not.

Stucke bases his hostile work environment on (1) the removal of his office computer for a month, (2) surprise inspections of Stucke's shop, (3) the severity of the discipline meted out in response to an argument with Brooks, (4) his failure to obtain his desired shift work after he was disciplined and transferred from PhilaCor, and (5) his reassignment to the Barricade Shop upon his return to PhilaCor. The District Court considered only the first two categories of incidents, did not address the fifth, and viewed the shift work denials and discipline as discrete acts of disparate treatment that could not be considered for the purposes of a hostile work environment claim.

In failing to consider the "discrete" acts of denying Stucke his desired shift work and the allegedly disparate discipline, the District Court erred, but the error was ultimately harmless. Nevertheless, we pause here to briefly clarify the correct standard for evaluating discrete acts in the context of a hostile work environment claim. The District Court relied upon the "bright-line distinction between discrete acts," on the one hand, and the aggregate of non-actionable individual acts that could form the basis of a hostile work environment claim on the other. That distinction exists primarily for statute

---

[8] *Id.* (internal quotation marks omitted).
[9] *Id.*

of limitations purposes, which are not at issue here, making this rationale inapposite.[10]
Here the question is not the timeliness of the plaintiff's complaint but whether those acts complained of can, as a matter of law, rise to the level of creating a hostile work environment. Thus, the District Court should have considered all of the acts alleged, regardless of whether they were individually actionable.

Even taking all of the acts complained of together, Stucke cannot establish a hostile work environment claim. First, there is no evidence that Stucke suffered discrimination because of his race. The parties stipulated that Stucke was not subjected to a single derogatory comment about his race during his employment with the City. The only racially charged comment that appears anywhere in the record is a comment related second hand by Donna Marie Johnson, a corrections captain, who had a long-term relationship with Deputy Commissioner Hammond. Johnson said at her deposition that she recalled Hammond telling her, in regard to Brooks—without mentioning Stucke—that Hammond was "looking out for a brother." Johnson testified at her deposition that she did not take the comment to be racial in nature and that she viewed it as Hammond's attempt to take sides in a dispute between Brooks and Doherty, with the issue being gender instead of race. Even assuming that Hammond made the comment and it has the racial overtones Stucke ascribes to it, this single, offhand, hearsay comment is insufficient to create the kind of inference of racial animus necessary to establish a hostile work environment claim. This is particularly true here, where Stucke admits that there

---

[10] *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

7

was no racial animus among the prison employees and the parties stipulated that no employee ever made a derogatory comment to Stucke about his race.

Moreover, the acts complained of are not sufficiently severe to rise to the level of a hostile work environment. The Supreme Court has made clear that Title VII is not "a general civility code" and that "the ordinary tribulations of the workplace" are not grounds for a hostile work environment claim.[11] Stucke's complaints are nothing more than "ordinary tribulations" indicating friction between a supervisor and an employee, not the type of severe and pervasive abusive environment giving rise to at Title VII claim.

**B.**

Stucke's disparate treatment claim revolves around his resignation from his position as Acting Assistant Director. The District Court held that Stucke did not suffer an adverse employment action when he stepped down because his removal did not qualify as a constructive discharge. The District Court is correct.

Under the *McDonnell Douglas* standard, an employee must show that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination" to set forth a *prima facie* claim for disparate treatment.[12] Stucke claims that he suffered an adverse employment action because he was "constructively discharged" from his position

---

[11] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).
[12] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

8

as Acting Assistant Director when Doherty told him that the prison system would not change the position's requirements.

A constructive discharge claim may proceed to a jury if "a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."[13]  Among the relevant factors to consider are whether an employee was threatened with termination, demoted, had his pay reduced, was involuntarily transferred, had his job responsibilities altered, or was given unsatisfactory job evaluations.[14]  None of the factors above apply to Stucke's time as Acting Assistant Director, since, at most, the conversation that Stucke claims caused him to resign pertained to his eligibility for the *permanent* Assistant Director position, not the acting position he then occupied.  Stucke admits he stepped down because he determined that he would not meet the qualifications for the permanent position and he did not intend to do anything to obtain those qualifications.  Moreover, there is nothing to indicate that Stucke could not have proceeded in the Acting Assistant Director position for a significant period of time, particularly in light of Brooks' serving in the acting position for three years after ascending to it.  Consequently, there was no constructive discharge.

The District Court also held that any argument that Stucke was given disparate discipline was waived because it was not raised until Stucke's Sur-Reply Brief.  This was error, since the second amended complaint stated that "disciplining and demoting Stucke"

---

[13] *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (alteration in original).
[14] *Id.*

was one of the ways in which Stucke was allegedly treated differently.[15]  Nevertheless, this argument is not pressed on appeal and is therefore waived.

## C.

As for the retaliation claims, the District Court considered only whether Stucke was retaliated against for telling Brooks that he was going to "file a lawsuit."  This was error because the additional retaliatory actions pertaining to not obtaining more desirable shift work and his reassignment to the barricade shop upon his return to PhilaCor were set forth in the second amended complaint and incorporated into the retaliation claim.

All of the retaliation claims fail, however, since Stucke cannot establish a causal link between any protected activity and any alleged acts of retaliation, a necessary condition for any Title VII retaliation claim.[16]  First, the District Court was correct that vaguely referring to filing a lawsuit is insufficiently specific to qualify as protected activity under Title VII.  As the District Court correctly held, "we look to the message being conveyed" to determine if an employee has opposed unlawful practices so that his conduct is protected by Title VII.[17]  Stucke admits that he did not mention race or any other form of discrimination when he threatened to sue, and merely stated that he was incensed that Brooks was given the Acting Assistant Director job despite not having a degree.  Such a generalized grievance, without more, cannot constitute the type of conduct that is protected by Title VII.

---

[15] S.A. 10.

[16] *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).

[17] *Id.* at 343.

10

Stucke's filing of a PHRC complaint in 2011, on the other hand, is undoubtedly protected activity, since it clearly identified his employer and the practice to which he objected.[18]  Yet, assuming Stucke has put forward a *prima facie* case of retaliation based on his failure to obtain desirable shifts and his transfer to the barricade shop, the City has put forward reasonable non-discriminatory rationales for those decisions.[19]  The City claims that he was denied the shift work because of his then existing disciplinary record stemming from his altercation with Brooks and his reputation as a trouble maker and an "asshole."  These non-discriminatory rationales offered by the City are plausible. Consequently, at the summary judgment stage the burden shifts to Stucke to come forward with sufficient evidence for a reasonable juror to find that the City's plausible rationales are mere pretext.[20]  Stucke failed to do so.

### III.

For the foregoing reasons, we will affirm the District Court's entry of summary judgment on all counts in favor of the City of Philadelphia.

---

[18] *Id.*
[19] *McDonnell Douglas Corp.*, 411 U.S. at 802–03.
[20] *Id.*