**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2926
_____

MAURICE NELSON CLARK,
Appellant

v.

THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:23-cv-04853)
District Judge: Honorable Mark A. Kearney
_____

Submitted under Third Circuit LAR 34.1(a)
December 8, 2025
_____

Before: KRAUSE, PHIPPS, and CHUNG, *Circuit Judges*

(Filed: December 8, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Dr. Maurice Nelson Clark appeals the District Court's grant of summary judgment to the Trustees of the University of Pennsylvania (Penn) on his race-based employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Because the District Court properly concluded that Clark failed to establish a *prima facie* case of discrimination, we will affirm.

## I.    DISCUSSION[1]

Clark, a clinical pharmacist, alleges that Penn discriminated against him based on his race by issuing him a first written warning and limiting his work hours as discipline for "[s]leeping on the job," without imposing the same discipline on non-Black clinical pharmacists who engaged in different misconduct. App. 206-07. Proof of an employer's discriminatory motive is critical to a successful disparate treatment claim. *Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3d Cir. 2024). Where, as here, direct evidence of discriminatory motive is lacking, we apply the *McDonnell Douglas* burden-shifting framework. *Id.* at 472-73 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Under that framework, Clark must "establish a prima facie case of discrimination by showing that: (1) []he is a member of a protected class; (2) []he was qualified for the position []he sought to attain or retain; (3) []he suffered an adverse employment action;

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and this Court has jurisdiction under 28 U.S.C. § 1291. We conduct plenary review of a district court's summary judgment ruling. *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 141 (3d Cir. 2017).

and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If Clark establishes a *prima facie* case, the burden shifts to Penn to "articulate a legitimate, non-discriminatory reason for the adverse employment action," and if Penn does so, the burden shifts back to Clark "to show that [Penn's] proffered reason is merely pretext for intentional discrimination." *Id.*

Below, we explain that (A) Clark failed to establish a *prima facie* case of race-based employment discrimination, and (B) even if Clark had made out a *prima facie* case, he could not prove that Penn's proffered reason for imposing discipline was pretextual.

### A.    Clark Failed to Establish a *Prima Facie* Case of Employment Discrimination.

Clark contends that he sufficiently proved intentional discrimination with the circumstantial evidence that three non-Black clinical pharmacists who engaged in different misconduct (the Pharmacists) were treated more favorably by Penn.[2] Comparators "need not be identical but must be similarly situated in 'all material respects.'" *Qin*, 100 F.4th at 474 (quoting *In re Trib. Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). Relevant considerations include whether the employees had the same job title, dealt with the same supervisor, were subject to the same standards, shared similar

---

[2] Clark argued before the District Court that a pharmacy intern and a pharmacy technician were also appropriate comparators, but the District Court properly rejected that argument because those employees had different job titles and, on appeal, Clark only relies on those individuals as "probative evidence" of disparate treatment "when placed together with" the Pharmacists, not as independent comparators. Op. Br. 34.

job responsibilities, *id.*, and "engaged in the same conduct," *In re Trib. Media*, 902 F.3d at 403 (citation modified) (rejecting a comparator because the plaintiff did not show that the comparator's conduct "involved the same degree of yelling, profanity, and disruption"); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) (noting that evidence of an employee "who engaged in the same conduct but was treated more favorably, may give rise to an inference of unlawful discrimination").

Clark emphasizes that the Pharmacists share his job title and, like Clark, engaged in conduct that would typically result in termination of employment under Penn's Performance Improvement and Progressive Steps (PIPS) policy—i.e., conduct of "comparable seriousness." Op. Br. 22. But the Pharmacists are not appropriate comparators because they engaged in different misconduct implicating different safety risks than sleeping on the job. Clark does not argue otherwise and instead relies on the similarity in seriousness under the discretionary PIPS policy to meet his burden. However, an employer's adoption of a progressive discipline policy does not render each employee who is eligible for the same sanction "similarly situated" for purposes of Title VII, particularly when the policy includes a "specific statement that progressive discipline is optional." *Iweha v. Kansas*, 121 F.4th 1208, 1226 (10th Cir. 2024). *Cf. id.* at 1226-27 (rejecting a Black pharmacist's argument that her termination was racially motivated because the employer "fail[ed] to follow a progressive approach to discipline as mandated by their own written policy" on the ground that the argument was "untenable" given that "progressive discipline was discretionary"); *see also Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 255-56 (6th Cir. 2023) (requiring proof that employees

4

were similarly situated before assessing how the employer applied its progressive disciplinary policy); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (explaining that when the progressive disciplinary procedure was discretionary, "no reasonable jury could conclude that the [employer's] failure to follow progressive discipline procedures suggested discrimination."); *see also Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008) (discussing how "the *prima facie* case and pretext inquiries often overlap" and are supported by the same evidence)..

Because the PIPS policy includes a specific statement that Penn "at all times retains the right" to deviate from the policy's stepwise discipline, App. 160, and because the Pharmacists engaged in different misconduct, we reject Clark's attempt to define similarly situated individuals as all clinical pharmacists who engaged in misconduct that would typically result in termination of employment under the PIPS policy. Accordingly, Clark cannot meet his burden to prove a *prima facie* case of race-based employment discrimination with this comparator evidence.

### B. Clark Cannot Show That Penn's Articulated Reason for Imposing Discipline Was Pretextual.

Even if Clark could make out a *prima facie* case of employment discrimination, he cannot show that Penn's legitimate, nondiscriminatory reason for disciplining him—i.e., that he committed a terminable offense under the PIPS policy by sleeping on the job—was pretext for intentional race-based discrimination. *See Qin*, 100 F.4th at 474-75. To establish pretext, Clark must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

5

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Clark first attempts to discredit Penn's articulated reason for imposing discipline by claiming that Penn's reliance on a single email report of Clark sleeping on the job, without further investigation, cannot support an "honest, good faith belief" that he engaged in that misconduct. Op. Br. 42. But "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent," so the argument that Penn's "decision was wrong or mistaken" is immaterial. *Fuentes*, 32 F.3d at 765. Clark then points to comparator evidence to suggest that race-based discrimination motivated his discipline. But we have already held that the Pharmacists are not appropriate comparators and do not create an inference of discrimination, so any different treatment of these differently situated individuals cannot establish pretext. *See C.A.R.S.*, 527 F.3d at 370.

## II. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.