**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3410
_____

THOM W. PARSON,
                    Appellant

v.

THE VANGUARD GROUP
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-03942)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted under Third Circuit L.A.R. 34.1(a)
June 8, 2017

Before:  CHAGARES, VANASKIE, and FUENTES Circuit Judges

(Filed: August 1, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

The plaintiff, Thom W. Parson ("Parson"), brought this case alleging race and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. § 951 et seq.[1]  The District Court granted summary judgment in favor of the defendant, The Vanguard Group, Inc. ("Vanguard").  For the reasons set forth below, we will affirm the judgment of the District Court.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition.  Parson is a fifty-one year-old African-American male who worked at Vanguard from 1987 to 2014.  He was terminated on May 12, 2014.  At the time of his termination, he was working as a Level B Document Research Process Associate ("Processor") in Vanguard's Client Relationship Group.  He was responsible for "completing research requests, maintaining standards for quality and productivity, and responding to routine client requests for account histories."  Appendix ("App.") 65 ¶ 5. From 2010 through mid-January 2014, Angela Rodden ("Rodden"), a Caucasian female, was Parson's direct supervisor.  From mid-January 2014 until Parson's termination, Anthony Perilli ("Perilli"), a Caucasian male, was Parson's direct supervisor.  Kyle Easterbrook ("Easterbrook"), a Caucasian male, supervised both Rodden and Perilli while

---

[1] Parson had also raised hostile work environment and retaliation claims.  He abandoned these claims at the summary judgment stage, see App. 85 n. 2, and they are not at issue on appeal.

2

they were Parson's supervisor. Nina Mattson-Thomas ("Mattson-Thomas") worked as a Crew Relations Specialist in Vanguard's Crew Relations department, a division of Vanguard's Human Resources Department.

Parson's performance and disciplinary history, as relevant to this case, is as follows. In his 2010 year-end review, Parson received a "fully successful" rating, but Rodden advised him that he should "[f]ocus on increasing [his] quality by paying attention to the details of the client request." App. 385. In his 2011 year-end review, he received a "further development needed" rating. Again he was advised to "[f]ocus on increasing [his] quality by paying attention to the details of the client request." App. 389. Rodden also noted, "Thom, you are an experienced associate on the Research team but continue to ask questions on how something should be processed. It would be expected with your tenure and expertise that you should be able to analyze and resolve issues more independently without relying on others." App. 390. On February 8, 2012, Parson received a Written Alert for Performance, reiterating that he "continue[d] to ask questions on how something should be processed . . . [and was] not able to make quality decisions when interpreting client requests independently." App. 65 ¶ 15. On February 14, 2012, Parson received a Written Alert for Absence, Lateness, or Dependability "for taking excessive unscheduled time off." App. 67 ¶ 16. By May 14, 2012, Parson had "resolved" the written alerts. In his 2012 year-end review, Parson again received a "further development needed" rating, and Rodden commented that "looking ahead into 2013, [he] should continue to focus on meeting department and quality and productivity standards <u>consistently</u> throughout the year." App. 405.

On October 1, 2013, Parson received a Written Alert for Performance noting that, despite his 18 years of experience in Research, he "continue[ed] to show inconsistencies in [his] processing. [He] struggle[d] to make quality decisions and continue[d] to ask many questions on how to process Research requests." App. 409. The alert identified four other "competency gaps" and provided examples of Parson's deficient performance. App. 409. On December 13, 2013, after consulting with Easterbrook, Rodden issued Parson a Formal Warning for Performance. The warning stated that Parson had failed "to demonstrate consistency in closing [the gaps identified in the October Written Alert for Performance]." App. 427. Rodden noted that Parson "continue[d] to show inconsistencies in [his] processing. [He] struggle[d] to make quality decisions and continue[d] to ask many questions on how to process Research requests." App. 427. The warning also identified five competency gaps and provided examples of Parson's deficient performance. Parson electronically signed the notice, acknowledging that he had to make "significantly sustained improvement in the areas mentioned . . . immediately," that he had to maintain acceptable performance in other aspects of his job, and that failure to do so "could result in further disciplinary action, up to an including termination of [his] employment." App. 429. He further acknowledged that he had the right to "submit a written rebuttal to [his] supervisor," App. 429. He never did so. Parson received a "further development needed" rating in his 2013 year-end review.

In mid-January 2014, Perilli became Parson's supervisor. Perilli noticed that Parson's productivity numbers were low and, upon investigation, discovered there was a glitch in the computer program that measured productivity. Although the problem was

4

never resolved, Perilli told Parson that his productivity numbers would not be held against him. During the time that Parson's productivity numbers were erroneously low, both Rodden and Perilli had supervisory access to the computer program.

Parson's December 2013 formal warning was in effect until April 9, 2014. On April 9, 2014, Perilli reported to Mattson-Thomas that Parson had several "fall out items" since the warning had been in effect. On May 12, 2014, Perilli and Mattson-Thomas met with Parson and terminated him as a Vanguard employee.

Parson offers the following to support his claim of race discrimination. In June 2013, Parson met with Rodden to discuss him taking some time off. At the meeting, Rodden purportedly told him, "Vanguard may not be the place for your type." App. 119. At a later meeting, Rodden allegedly stated, "Vanguard may not be the place for you." App. 120. Additionally, during the time that Parson reported to Rodden, several supervisors, including Perilli, allegedly called him "Willie," the name of another African-American employee, and called Willie, "Thom." Finally, Parson claims that during his time in the research department, 13 people from the department were "fired or forced into early retirement," and of those 13 people, 11 were African-American. App. 120.

Vanguard moved for summary judgment, arguing that Parson had not established a prima facie case of age or race discrimination because he lacked sufficient evidence to support an inference of intentional discrimination. Furthermore, even if Parson could establish a prima facie case of discrimination, Vanguard had a legitimate, non-discriminatory reason for his termination and Parson could not establish that it was pretextual. The District Court granted summary judgment in favor of Vanguard, finding

5

that (1) Parson failed to establish a prima facie case of age discrimination,[2] and (2) even though he made out a prima facie case of race discrimination, Vanguard had offered a legitimate, non-discriminatory reason for his termination and Parson failed to show that this reason was pretextual. Parson timely appealed.

II.[3]

"We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied." Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010). Summary judgment should be granted if, "viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 of chapter 42 of the United States Code provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be

---

[2] On appeal, Parson does not challenge the District Court's grant of summary judgment with respect to his age discrimination claims, nor does he challenge the District Court's grant of summary judgment on his PHRA claim. See Parson Br. 4. Accordingly, we only review the District Court's grant of summary judgment with respect to his race discrimination claims brought under Title VII and 42 U.S.C. § 1981.

[3] The District Court had jurisdiction over Parson's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Parson's state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Where, as here, there is no direct evidence of discrimination, we evaluate the plaintiff's Title VII and Section 1981 claims according to the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See McDonnell Douglas, 411 U.S. at 802-804 (Title VII); Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009) (Section 1981). The McDonnell Douglas framework is a three-part, burden-shifting test. The plaintiff must first make out a prima facie case of discrimination by showing (1) that he is a member of a protected class, (2) that he was qualified for the position in question, (3) that he suffered an adverse employment action, and (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). If the plaintiff makes out a prima facie case of discrimination, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. If the defendant articulates such a reason, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." Id.

Even if we were to assume that the facts of this case, viewed in a light most favorable to Parson, could support an inference of discriminatory intent, we conclude that Vanguard has offered a legitimate, non-discriminatory reason for Parson's termination

7

and that Parson has failed to show that this reason is pretextual. Vanguard has established that Parson was terminated because of his "continued poor quality of work." Vanguard Br. 32. This record of poor performance is documented in Parson's 2011, 2012, and 2013 year-end reviews; his 2012 and 2013 Written Alerts for Performance; and his 2013 Formal Warning of Performance. The reviews and warnings identified that Parson consistently made errors in his processing, struggled to understand client requests, made poor decisions, and struggled to work independently. The documented record of Parson's consistently poor performance over his final three years at Vanguard constitutes a legitimate, non-discriminatory basis for his termination.

Parson has failed to create a genuine issue of material fact that this reason was pretextual. To demonstrate pretext,

> the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Parson offers the following facts to undermine Vanguard's reason for terminating him: (1) he did not receive negative reviews until he worked under Rodden, who he argues exhibited discriminatory animus towards him; (2) Perilli called him by the name of another African-American employee; (3) 11 out of the 13 employees fired or forced into retirement in his department were African-American; (4) "Rodden made sure to make it clear to Perilli immediately - right out of the gate when he replaced her as Plaintiff's manager - that Plaintiff was, in her

8

eyes, a poor performer"; and (5) "human intervention" was the "most likely explanation for the doctoring of Plaintiff's performance numbers." Parson Br. 21, 23.

Parson's evidence is unavailing. First, the fact that Parson had previously performed well over his 26-year career at Vanguard does not prove that his performance was not poor in the last three years. See Kautz v. Met-Pro Corp., 412 F.3d 463, 474 (3d Cir. 2005) ("The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law."). As to Rodden's discriminatory animus, even if her comment about Parson's "type" was racially discriminatory, Rodden was not part of the decision to terminate him, and "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Second, as to the fact that Perilli called Parson by the wrong name, Parson has offered no evidence to suggest that this was deliberate or a result of racial bias. Third, as to the fact that 11 out of 13 employees that were fired or forced out were African-American, while it is true that "[s]tatistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext," such evidence must be accompanied by analysis of the comparators. See Ezold, 983 F.2d at 542. Parson has offered no evidence of the employees' qualifications or circumstances of their termination that would allow us to conclude that this statistical trend was indicative of race discrimination. Fourth, as to Parson's argument that Rodden biased Perilli against him, the record merely shows that Rodden shared with Perilli Parson's

9

employment history and the warnings that he had recently received, as would be expected in a transition meeting between supervisors. Finally, as to Parson's productivity numbers, Parson offers no evidence to suggest that Rodden or Perilli manipulated the numbers or that his incorrect productivity numbers played a role in his termination.

After reviewing the evidence, we conclude that Parson has failed to show that Vanguard's proffered reason for his termination — poor performance — is merely pretext for intentional discrimination. Accordingly, the District Court's grant of summary judgment in favor of Vanguard was appropriate.

III.

For the foregoing reasons, the judgment of the District Court will be affirmed.