**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1188
_____

SHERRY MOORE,
                            Appellant

v.

SECRETARY U.S. DEPARTMENT OF HOMELAND SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 14-cv-04171)
District Judge:  Honorable Renée M. Bumb

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 19, 2017
Before:  VANASKIE, COWEN, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 21, 2017)
_____

OPINION[*]
_____

PER CURIAM

Sherry Moore, an employee of the Department of Homeland Security ("DHS")

Immigration and Customs Enforcement ("ICE") when the relevant events occurred,

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

appeals from the District Court's order granting summary judgment to the defendant. For the following reasons, we will affirm.

In July 2014, Moore filed a complaint in the United States District Court for the District of New Jersey against Jeh Charles Johnson, then the Secretary of DHS. Moore alleged race and gender discrimination and retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., arising from DHS's failure to select her for promotion to Deportation Officer ("DO") in 2012. Moore claims that DHS's Newark Field Office administered a multi-step evaluation process, including a resume assessment and a timed writing test, which violated agency policy and was designed to discriminate against her. Specifically, Moore asserts that Gregory Kendrick, the Deputy Field Office Director, led the hiring process and formulated and applied the writing process to discriminate against her based on her race and gender and in retaliation for her participation in a 2004 Equal Employment Opportunity ("EEO") matter. She also claims that Kendrick denied her two other promotions dating back to 2007.

In May 2016, DHS filed a motion for summary judgment, which the District Court granted, concluding that Moore failed to establish prima facie cases of race or gender discrimination and retaliation. This timely appeal followed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's decision granting summary judgment. See McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Moore has not introduced direct evidence of discrimination, we analyze her claims under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff seeking to establish a prima facie case of race or gender discrimination must show that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

Here, with regard to the fourth factor,[1] Moore points to several facts from which she claims an inference of unlawful discrimination arises: (1) the writing assessment had never been used before in this hiring context; (2) Kendrick – with whom she had a previous EEO-related disagreement – led the application process; (3) inclusion of the writing sample and unapproved resume rating system is a violation of policy or is otherwise invalid; and (4) she has historically been denied leadership roles and promotions – which would have yielded a higher resume score – because of her race and gender. We agree with the District Court that these allegations do not create an inference of unlawful race or gender discrimination.

---

[1] Defendant concedes that the facts establish the first three elements of a prima facie case of race and sex discrimination.

First, the novelty of the writing test does not advance Moore's case, particularly because the Field Office Director, John Tsoukaris, explained that writing is a critical skill for DOs to possess that had previously been not fully examined during the hiring process. Likewise, even assuming that Kendrick led the application process (which ICE denies), and that he vaguely told her there would "be consequences" for her participation in the 2004 EEO complaint, she has not pointed to any evidence in the record that suggests that Kendrick knew she had applied for the 2012 DO position when the writing assessment was devised or that Moore wrote poorly enough that a writing sample would weed her out of the process. (Indeed, she claims to be a strong writer, further undermining her claim that the writing test was designed to discriminate against her.) Similarly, because Moore has not shown that the writing test was discriminatory, her arguments about whether it was properly developed do not help her. See generally Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995). Finally, while she contends that she was previously denied promotions on discriminatory grounds, she has not presented any evidence in support of that claim. As a result, Moore has failed to put forth sufficient evidence from which a reasonable factfinder could draw an inference of unlawful discrimination based on her race or gender. See Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).[2]

---

[2] On appeal, Moore asserts a hostile-work-environment claim, but she did not raise this theory before the District Court, and cannot now raise an alternative theory of liability for the first time on appeal. See Birdman v. Office of the Governor, 677 F.3d 167, 173 (3d Cir. 2012). Likewise, she attaches as exhibits to her appellate brief (1) a 2016 ICE

We are equally unpersuaded by Moore's retaliation claim. A plaintiff seeking to establish a prima facie case of retaliation under Title VII must show: (1) that she engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) "adverse action by the employer either after or contemporaneous with the employee's protected activity"; and (3) a causal connection between the protected activity and the adverse action. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015). To establish a causal link between the protected activity and adverse action, an employee "may rely on the temporal proximity" between the two events if the level of proximity is "unusually suggestive" of a link. Id. at 196.

Here, with regard to the third factor,[3] Moore points to Kendrick's role in the application process, his prior statement that "there would be consequences" from the 2004 EEO matter, and his denial of two previous promotions to Moore in 2007. We agree with the District Court that these incidents, the majority of which occurred some five to eight years prior to the denial of the 2012 promotion in this case, do not

---

Organizational Climate Assessment; and (2) her Performance Work Plan for October 1, 2014, through September 30, 2015. Because Moore did not submit these documents to the District Court, and there are no extraordinary circumstances present to justify their admission, we will not consider them on appeal. See In re Application of Ariel Adan, 437 F.3d 381, 388 n.3 (3d Cir 2006).

[3] The parties agree that Moore has satisfied the first two elements of her prima facie case: Moore engaged in protected activity before and while she applied for the promotion, and DHS did not promote her to DO.

5

sufficiently suggest causation for purposes of a retaliation claim. Moore's 2004 EEO activity occurred long before her 2012 application and involved none of the managers who evaluated her resume or writing sample. While Moore argues that she had a negative history with one resume assessor, Tammy Marich, the record is clear that manager James Fitzgerald, not Marich, evaluated Moore's resume.

Assuming arguendo that Moore could establish a prima facie case in support of any of her claims (racial discrimination, gender discrimination, or retaliation), we agree with the District Court that nothing in the record would permit a finding that DHS's proffered explanation for its employment decision – that Moore scored insufficiently during the first two rounds of evaluation – was pretext. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). To show pretext, Moore relies largely on allegations that Kendrick constructed the writing test to deny her the promotion, that the hiring process assigned too much weight to applicants' supervisory experience, and that it made no sense for the panel to twice evaluate writing skills. We conclude that these measures bear a rational relationship to the duties of a DO and thus do not support her claim of pretext. See Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) (holding that only "evaluating criteria which lacks any relationship at all to the performance of the employee being evaluated" may show evidence of unlawful conduct). Moreover, Moore has not demonstrated that Kendrick or any of the other hiring managers had an opinion of Moore's writing skills, such that a writing assessment would effectively disqualify her. While Moore argues repeatedly in her appellate brief that she has evidence that the

6

writing test was not graded blindly, she has not presented any such evidence to the District Court or this Court, and supervisor Kerry Gill's sworn affidavit states that each applicant's identity was unknown to Gill as he graded the writing samples.  Because Moore has failed to provide evidence from which a factfinder could reasonably infer that DHS's proffered reason for denying Moore the 2012 promotion is pretext for discrimination, the District Court properly granted summary judgment to DHS as to Moore's claims.[4]  See Fuentes, 32 F.3d at 764-65.

For the foregoing reasons, we will affirm the District Court'

---

[4] On appeal, Moore also claims for the first time that the District Court permitted the government "to withhold discovery and any self-incrimination evidence."  Moore sought the release of discovery regarding the behavior of management – specifically, sexual relationships with subordinates.  The government opposed on the grounds that its release would damage the personal and professional reputations of past and current employees, and that the information had no bearing on the denial of Moore's promotion.  Moore did not object to this withholding in the District Court or argue that the government's failure to produce this material prevented her from opposing the summary judgment motion.  We therefore will not consider this issue on appeal.  See, e.g., Bradley v. United States, 299 F.3d 197, 207 (3d Cir. 2002) (holding that, in general, "failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal").